Austin B. ROHRBAUGH and L. Clark
Brown, t/a Rohrbaugh & Co.,
Petitioners,

v.

DISTRICT OF COLUMBIA,
Respondent.

Austin B. ROHRBAUGH, t/a Rohrbaugh
& Co., Petitioner,

v.

DISTRICT OF COLUMBIA,
Respondent.

Nos. 12422, 12423.

United States Court of Appeals
District of Columbia Circuit.

Argued March 8, 1955.

Decided July 28, 1955.

Mr. Jo V. Morgan, Jr., Washington, D. C., for petitioners.

Mr. George F. Donnella, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

These are petitions to review decisions of the District of Columbia Tax Court. Petitioners are seeking to recover certain taxes paid by them under the statute, now D.C.Code, § 47–1574b (1951), levying a tax of 5% upon the income of unincorporated businesses for the privilege of engaging in business in the District and of receiving income from sources within the District. The Tax Court ruled against them.

During the years 1949, 1950 and until April 1, 1951, petitioner Rohrbaugh conducted a brokerage and securities business in the District of Columbia as sole proprietor under the name of Rohrbaugh & Company. On April 1, 1951, petitioner Brown joined him as a partner or coventurer in the business, which continued trading under the same name. If more than 80% of the gross income of the business was derived from personal services actually rendered by petitioners *and* if capital was not a material income-producing factor in each of the years 1949, 1950 and 1951, their enterprise would be excluded from the statutory definition of "unincorporated business" subject to tax.[1]

In each taxable year Rohrbaugh & Company derived income from brokerage commissions, dividends on securities held as firm investments, and profit from sales of such securities. In 1950 it also derived income from underwriting and in 1951 it had profits from dealing in securities as a principal. The Tax Court determined that only the income from brokerage commissions represented income from personal services actually rendered by the petitioners. In both the years 1950 and 1951 less than 80% of the firm income was obtained from brokerage commissions. Although 90.41% of the firm income in 1949 was from brokerage commissions, the Tax Court ruled that the remaining 9.59% of income representing dividends on and profits from sales of firm securities in that year, as well as the 11.69% and 7.71% of the gross income derived from the same sources in 1950 and 1951, respectively, was obtained from the use of firm capital and that this income was material. Accordingly, the Tax Court concluded that in 1949 the business failed to meet the second test and that in 1950 and 1951 it failed to meet both tests for exclusion from the term "unincorporated business" provided by the statute quoted in note 1, *supra*.[2]

*First.* Petitioners contend that the Tax Court erred in finding that the income from underwriting and from dealing in securities as a principal was not income derived from personal services actually rendered by them within the meaning of the Code section.

It appears that in 1950 petitioner Rohrbaugh undertook to underwrite a portion of an issue of new shares be-

---

1. D.C.Code § 47–1574 (1951), which reads in part:

   "The words 'unincorporated business' do not include \* \* \* any trade or business in which more than 80 per centum of the gross income is derived from the personal services actually rendered by the individual or members of the partnership or other entity in the conducting or carrying on of any trade or business and in which capital is not a material income-producing factor."

2. The able opinion of the Tax Court (John W. Ahern, Acting Judge) contains detailed findings of fact and a full discussion of the reasons for its conclusions and decision.

ing put out by Potomac Electric Power Company. His participation was limited, however, to the total number of shares his customers had already indicated they would like to purchase. Prior to the date on which petitioner was required to pay for the stock, underwritten by him, his customers had paid for their stock allotments,[3] and it was not necessary for petitioner to use any of his capital. Petitioner's income from the transaction represented the difference between the public offering price and the price to him as underwriter. The Tax Court viewed this as a profit from the purchase and sale of securities by an underwriter and not as a commission paid for personal service rendered to customers.

■ During 1951, 71.44% of the firm's income came from so-called "principal" transactions in unlisted securities. Dealers holding inventories of unlisted securities for sale issue "sheets" or "lists" which state the offering prices to the customer of the securities held for sale. Petitioners did not themselves maintain inventories of such securities. When they received an order for an unlisted security from a customer, they contacted a dealer and negotiated with him for a concession or discount off the listed price to be allowed to them as a dealer. The amount of the concession or discount they obtained fixed their remuneration. The securities were then delivered to the customer at the offering price listed on the "sheet," without the addition of any charge for a commission. The Tax Court treated the income from such transactions as a profit on a purchase and sale by a dealer.

We perceive no error in the Tax Court's view of either type of transac-

tion. As an underwriter petitioner concededly was obligated to accept and pay for the shares underwritten. He obtained his profit from selling the shares at the higher market price to customers. In the principal transactions the income resulted from the efforts of the petitioners on their own behalf to obtain the security at an advantageous price lower than the listed or market price at which they were required to deliver it to their customers. In both cases the profit was derived from buying and reselling as a merchant; it was not a commission added to the market price and collected from the firm's customers for its services as agent in buying securities on their behalf.

■ *Second.* Petitioners also attack the holding below that the dividends and profits from trading in securities constituted material income produced by the firm's capital.

They seem to say that the securities were "personal investments" of petitioner Rohrbaugh rather than firm investments, and that the income was his personal income rather than firm income. But the Tax Court found, to the contrary, that the securities were firm investments and that the income therefrom was firm income. Since the securities were registered in the firm's name and since the firm's own financial statements filed with the Washington Stock Exchange showed the income from investments as firm income, the Tax Court was certainly warranted in so finding.

■ Petitioners further assert that the firm's investments were not used as capital in the business. Not only is this assertion in conflict with the Tax Court's findings,[4] but it seems irrelevant. The

---

3. Rohrbaugh had an arrangement with the brokerage firm of Auchincloss, Parker & Redpath under which that firm upon his order executed purchases and sales of securities for his customers. In the underwriting transaction the customers paid the price for their stock to Auchincloss rather than to petitioner directly.

4. Although the Tax Court found that the firm capital was not directly used in financing purchases or sales of securities for its customers, whether as broker, dealer or underwriter, it also found that the capital represented by the firm investments was deliberately set up as part of the firm's capital to serve a useful purpose and that it did serve a useful purpose in the firm's business. It

statutory grant of exemption does not require in terms that capital not be used in the business, but only that it not be a material income-producing factor. It may be enough to preclude exemption that the firm had capital invested in securities which produced material amounts of income, whether or not that capital was directly used in conducting the ordinary firm business. A holding to that effect was made by the Eighth Circuit, under a Federal tax statute worded almost identically with the one before us. Conklin-Zonne-Loomis Co. v. Commissioner, 8 Cir., 1928, 29 F.2d 698, certiorari denied, 1929, 279 U.S. 871, 49 S.Ct. 512, 73 L.Ed. 1007. We need not reach the point here, because in any event, as we have seen, the invested capital did serve a useful purpose in the firm's business in the taxable years.

The capital represented by the firm's investments produced 9.59% of the firm's income in 1949, 11.69% in 1950 and 7.71% in 1951. The Tax Court ably demonstrated that these percentages must be regarded as material and indeed petitioners do not undertake to show otherwise.

It follows that the petitioners' business cannot be excluded from the definition of "unincorporated business" in any of the taxable years and that the Tax Court's decisions must be

Affirmed.

was amply justified in so finding. Rohrbaugh as a member of the Washington Stock Exchange was required to submit financial statements for his business and to maintain a minimum working capital of $5,000. The firm's financial statements showed a capital of $22,500, the major part of which consisted of the securities in question and, as we have noted, listed the income from the securities as firm income. Rohrbaugh himself indicated that the listing of the investments as belonging to the firm showed "financial responsibility" and gave the firm "some backing." He further testified that it was necessary to maintain capital in excess of a $5,000 minimum in connection with the underwriting business. Even though participation in underwriting and dealer transactions did not involve the expenditure of capital in the taxable years because the transactions were handled in other ways, it seems indisputable that the lack of capital might have eliminated the firm from such ventures.